**SIGNED this 12 day of March, 2026.**



**Robert M. Matson
United States Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| In re:<br><br>Tanya Allison Gassmann<br><br>    Debtor | Case No. 26-50121-RMM<br><br>Chapter 13 |
| JJS Capital Group, LLC<br><br>    Movant<br><br>vs.<br><br>Tanya Allison Gassman, Debtor; and Camille Hope, Trustee<br><br>    Respondents | Contested Matter |

### MEMORANDUM OPINION ON MOTION FOR RELIEF FROM STAY

Before the Court is the Motion for Relief from Stay and for Further Relief from Stay on a Prospective Basis Pursuant to 11 U.S.C. Section 362(d)(4) [Doc. 15]

1

("Motion") filed by JJS Capital Group, LLC ("JJS"). JJS asks that the automatic stay of 11 U.S.C. § 362(a) be terminated as to real property located at 1100 Packer Street, Key West, Florida ("1100 Packer Street Property"). JJS seeks prospective relief under 11 U.S.C. § 362(d)(4), asserting the filing of this case was part of a scheme to delay, hinder, or defraud JJS through multiple bankruptcy filings affecting the 1100 Packer Street Property.

The Court held a hearing on the Motion on February 26, 2026, at 10:30 AM. At the hearing were JJS's counsel, Debtor, who appeared pro se, and counsel for the Chapter 13 Trustee. At the close of evidence and arguments, the Court took the matter under advisement.[1]

As explained below, the Court finds the filing of this case was part of a scheme to hinder or delay JJS involving multiple bankruptcy filings affecting the 1100 Packer Street Property. This finding requires the Court to grant relief from the automatic stay under 11 U.S.C. § 362(d)(4),

**I.   Jurisdiction**

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the U.S. District Court for the Middle District of Georgia's Amended Standing Order of Reference, General Order 2012-1 (Feb. 21, 2012). This is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

---

[1] The audio recording of the hearing is attached to the four documents docketed on February 26, 2026, as "PDF with attached Audio File," Docs. 60–63.

2

## II. Findings of Fact

This is the fifth bankruptcy case filed within a year by the debtor Tanya Allison Gassmann ("Ms. Gassmann"), an entity owned and/or controlled by her, or one of her close associates. Each case was filed shortly before foreclosure sales to be conducted by JJS. The Court summarizes each case below.

### A. First Bankruptcy Case

On February 12, 2025, Ms. Gassmann filed Chapter 13 Case No. 25-11480-CLS in the U.S. Bankruptcy Court for the Southern District of Florida, Miami Division ("First Bankruptcy Case"). The First Bankruptcy Case was filed the day before JJS's foreclosure sale of real property located at 1104 Packer Street, Key West, Florida ("1104 Packer Street Property"). Ms. Gassmann was not the owner of record but obtained a stay of the foreclosure sale by virtue of being a named defendant in the judicial foreclosure proceeding.[2] The owner of record was Katharina Tiffany and Veritas Gassman, L.L.C., an entity owned and/or controlled by Ms. Gassmann. JJS sought stay relief to allow the foreclosure to proceed, which Judge Corali Lopez-Castro granted on March 26, 2025.[3]

Ms. Gassmann filed the First Bankruptcy Case with a "skeleton" Chapter 13 petition—a petition filed without the schedules, statements, and plan required by the

---

[2] The foreclosure proceeding as to the 1104 Packer Street Property is *Titan Funding, LLC v. Katharina Tiffany and Veritas Gassman, L.L.C., et al.*, Case No. 23-CA-00841-K in the Circuit Court of the 16th Judicial Circuit in and for Monroe County, Florida. JJS's interest in the 1104 Packer Street Property arose out of an assignment of the foreclosure judgment entered in this foreclosure action.
[3] *See* First Bankruptcy Case Doc. 20.

3

Bankruptcy Code and Federal Rule of Bankruptcy Procedure. She failed to cure the filing deficiencies, resulting in dismissal on March 26, 2025.[4]

### B. Second Bankruptcy Case

On June 20, 2025, Sinnsearan LLC ("Sinnsearan") filed Chapter 11 Case No. 25-16863-RAM in the U.S. Bankruptcy Court for the Southern District of Florida, Miami Division ("Second Bankruptcy Case"). Sinnsearan is the same entity as Katharina Tiffany and Veritas Gassmann L.L.C., which at some point underwent a name change.[5]

The Second Bankruptcy Case was filed two days before JJS's rescheduled foreclosure sale of the 1104 Packer Street Property. Sinnsearan's petition was filed pro se and signed by Palani Meador as an authorized member.[6] Ms. Gassmann testified at the February 26, 2026, hearing that Mr. Meador is a longtime family friend as well as a peer of her daughters. She also testified she was involved with Sinnsearan's bankruptcy filing as a member of Sinnsearan. The docket of the Second Bankruptcy Case confirms Ms. Gassmann's relationship to Sinnsearan and shows she was heavily involved in its bankruptcy proceedings.[7]

JJS again sought stay relief to complete the foreclosure sale of the 1104 Packer Street Property, this time seeking prospective relief to prevent future bankruptcy

---

[4] *See* First Bankruptcy Case Doc. 21.
[5] *See* Second Bankruptcy Case 1 at 1.
[6] *See* Second Bankruptcy Case Doc. 1 at 4. Sinnsearan would eventually retain bankruptcy counsel.
[7] *See, e.g.*, Second Bankruptcy Case Doc. 29 (filing identifying Ms. Gassmann and Palani Meador as Sinnsearan's two members); Doc. 30 (Disclosure of Compensation of Attorney for Debtor identifying Ms. Gassmann as the source of counsel's compensation and a member of Sinnsearan); Doc. 35 (dismissal order stating Ms. Gassmann was Sinnsearan's representative at a July 2, 2025, hearing on the U.S. Trustee's motion to dismiss); Doc. 50 (transcript of July 2, 2025, hearing, showing Ms. Gassmann's active participation as debtor's representative at hearing).

4

filings from staying its foreclosure efforts.[8] Judge Robert A. Mark granted that relief on July 7, 2025, preventing any bankruptcy filings within two years from staying the foreclosure proceedings as to the 1104 Packer Street Property.[9] The Second Bankruptcy Case was dismissed with prejudice on July 7, 2025, barring Sinnsearan from filing a bankruptcy petition for six months.[10]

### C.   Third Bankruptcy Case

On October 2, 2025, Palani Meador filed Chapter 13 Case No. 25-21661-LMI in the U.S. Bankruptcy Court for the Southern District of Florida, Miami Division ("Third Bankruptcy Case"). The Third Bankruptcy Case was filed the day before JJS's foreclosure sale of the 1100 Packer Street Property.[11] Meador filed the case pro se and with a skeleton petition. At the time of filing, Ms. Gassmann owned the 1100 Packer Street Property. The borrower and mortgage grantor in the relevant loan documents is Virginia and Packer Holdings LLC.

Although Meador did not own the 1100 Packer Street Property, was not a borrower or mortgage grantor in the relevant loan documents, and was not a named defendant in the foreclosure proceeding, he filed a Suggestion of Bankruptcy in the foreclosure proceeding identifying himself as an unknown owner/tenant. Meador claimed to reside in the 1100 Packer Street Property under a prepaid lease.[12]

---

[8] *See* Second Bankruptcy Case Doc. 10.
[9] *See* Second Bankruptcy Case Docs. 33 (original order), 52 (amended order).
[10] *See* Second Bankruptcy Case Doc. 35.
[11] The foreclosure proceeding as to the 1100 Packer Street Property is *JJS Capital Group, LLC v. Virginia and Packer Holdings, LLC, et al.*, Case No. 24-CA-153-K in the Circuit Court of the Sixteenth Judicial Circuit in and for Monroe County, Florida. JJS claims an interest in the 1100 Packer Street Property by virtue of a Final Summary Judgment of Mortgage Foreclosure entered August 29, 2025.
[12] *See* Third Bankruptcy Case Doc. 31 at 2.

5

JJS sought relief from the stay to proceed with the foreclosure, which Judge Laurel M. Isicoff granted on October 17, 2025.[13] Meador then moved to set aside the stay relief order, which the court denied.[14] Meador then voluntarily converted the case to Chapter 7 and appealed the denial of his motion to set aside.[15] The appeal was dismissed on December 12, 2025, for failure to file a record designation or a statement of issues.[16] The Third Bankruptcy Case was dismissed on December 2, 2025, for Meador's failure to file documents.[17]

### D. Fourth Bankruptcy Case

On November 21, 2025, Virginia and Packer Holdings LLC ("VPH") filed Chapter 7 Case No. 25-23766-RAM in the U.S. Bankruptcy Court for the Southern District of Florida, Miami Division ("Fourth Bankruptcy Case"). Ms. Gassmann signed the petition as an authorized representative of the debtor, in her capacity as manager of Key West Holdings Management LLC ("KWHM").[18] VPH filed the case pro se and with a skeleton petition. VPH eventually filed required schedules and statements.[19] Its disclosures identified Ms. Gassmann as a member of VPH and KWHM as VPH's manager.[20] VPH scheduled an interest in the 1100 Packer Street Property described as "None Corrected Deed executed 04/06/25 Leasehold 10 year Term."[21]

---

[13] *See* Third Bankruptcy Case Doc. 17.
[14] *See* Third Bankruptcy Case Docs. 20, 30.
[15] *See* Third Bankruptcy Case Docs. 31, 37.
[16] *See* Third Bankruptcy Case Doc. 48.
[17] *See* Third Bankruptcy Case Doc. 44.
[18] *See* Fourth Bankruptcy Case Doc. 1 at 4.
[19] *See* Fourth Bankruptcy Case Doc. 6.
[20] *See* Doc. 6 at 26, 37.
[21] Doc. 6 at 8.

6

The Fourth Bankruptcy Case was filed one day before JJS's rescheduled foreclosure sale of the 1100 Packer Street Property. JJS again sought stay relief to complete the foreclosure sale, this time seeking prospective relief under 11 U.S.C. § 362(d)(4) to prevent future bankruptcy filings from staying its foreclosure efforts.[22] Judge Robert A. Mark granted stay relief to allow JJS to complete the foreclosure but denied the request for prospective relief under § 362(d)(4) without prejudice.[23]

The Fourth Bankruptcy Case was dismissed with prejudice, on December 19, 2025, barring VPH from filing a bankruptcy petition for one year.[24]

### E.  Fifth and Current Bankruptcy Case

Ms. Gassmann filed the case currently before this Court on January 27, 2026, three days before JJS's rescheduled foreclosure sale of the 1100 Packer Street Property. She filed a skeleton petition, pro se, listing her current address as 12172 Linton Road, Sparta, Georgia. On January 28, 2026, Ms. Gassmann filed a document titled Notice of Related Proceedings and Automatic Stay Notification [Doc. 9]. This document provides notice of various matters, including the 1100 Packer Street Property foreclosure action, a pending appeal of that action, the foreclosure sale scheduled for January 30, and Ms. Gassmann's efforts to notify the state courts of her bankruptcy filing.

Ms. Gassmann filed the required schedules, statements, and Chapter 13 plan between February 10, 2026, and February 18, 2026. In her Schedules A/B, she claims

---

[22] *See* Fourth Bankruptcy Case Doc. 8.
[23] *See* Fourth Bankruptcy Case Doc. 15.
[24] *See* Fourth Bankruptcy Case Doc. 18.

7

an ownership interest in the 1100 Packer Street Property. *See* Doc. 41 at 1. In her Schedules H and I, Ms. Gassmann states she leases the 1100 Packer Street Property to Palani Meador under a 10-year commercial and residential lease dated September 6, 2022, receiving from Mr. Meador $1,600 per month for rent and an additional $4,500 per month for a loan repayment. *See* Doc. 37 at 2; Doc. 38 at 2. This combined $6,100 from Mr. Meador appears to be Ms. Gassmann's only monthly income. According to her Statement of Financial Affairs, Ms. Gassmann moved to Georgia from the 1100 Packer Street Property on April 1, 2025. *See* Doc. 43 at 1.

Ms. Gassmann filed a Chapter 13 Plan [Doc. 33] containing no payment provision for JJS's secured claim. Rather, Ms. Gassmann proposes to pay all claims in full *except* for JJS's claim. *See* Chapter 13 Plan at 6, ¶ 6.4. The plan states Ms. Gassmann has unsecured claims totaling $8,138.06, which Ms. Gassmann intends to pay in full over approximately 5 months through monthly plan payments of $1,939.01. *See id.* Debtor requests an early discharge when these payments are complete. *See id.*

JJS filed the Motion currently before the Court on February 3, 2026, seeking relief from the automatic stay with prospective effect under § 362(d)(4). JJS asserts this case and the previous four bankruptcy cases were not filed in good faith but rather to hinder or delay JJS's foreclosure sale efforts.

Ms. Gassmann has filed numerous documents opposing the Motion and generally disputing the validity of JJS's claim to the 1100 Packer Street Property.[25]

---

[25] *See* Debtor's Notice of Reservation of Rights to Object to Anticipated Proof of Claim by JJS Capital Group, LLC; Assertion of Superior Lien Status; and Reservation of Right to Respond to any Motion

8

In sum, Ms. Gassmann challenges JJS's claim based on an assortment of alleged wrongdoing and deceitful misconduct by JJS and its attorneys and other agents. The allegations include, among other things, deliberately failing to serve documents (both in the state court proceedings and bankruptcy cases); obtaining foreclosure judgments against parties not properly served or joined in the foreclosure actions (including Ms. Gassmann herself); making misrepresentations in other proceedings; fabricating a guaranty; concealing a foreclosure judgment from this Court; using a disbarred attorney in drafting the underlying mortgage on the 1100 Packer Street Property; making false sworn statements to a Florida state regulator; filing excessive mortgage liens; altering mortgage pages; making various contradictory and inconsistent statements; malfeasance by title companies retained by JJS; and an assortment of improprieties or deficiencies regarding original loan documents and in recording mortgages. Ms. Gassmann also asserts she has a superior lien on the 1100 Packer Street Property by virtue of a lis pendens recorded in the official records of Monroe County, Florida, in July 2017 in connection with a probate proceeding and a related court-approved settlement.[26]

---

[Doc. 44] (16-page document followed by 26 pages of exhibits); Debtor's Response in Opposition to Creditor JJS Capital Group LLC's Motion for Relief from the Automatic Stay [Doc. 47] (21-page document followed by 170 pages of exhibits); Debtor's Motion for Examination and Production of Documents Pursuant to Fed. R. Bankr. P. 2004 [Doc. 49] (11 pages); Debtor's Motion for Discovery, Sanctions, and Rule 9011 Relief Pursuant to Fed. R. Bankr. P. 7026, 9011, and 11 U.S.C. § 105(a) [Doc. 50] (33 pages); Notice of Filing of Suggestion of Bankruptcy in State Court Proceedings [Doc. 51] (7-page document followed by 148 pages of exhibits); Debtor's Objection to the Claim of JJS Capital Group LLC Pursuant to 11 U.S.C. § 502 [Doc. 56] (13 pages); Amended Debtor's Motion for Discovery Pursuant to Fed. R. Bankr. P. 7026 and 11 U.S.C. § 105(a) [Doc. 57] (25-page document followed by 742 pages of exhibits); Debtor's Supplemental Brief in Opposition to Creditor's Motion for Relief from Stay [Doc. 66] (11-page document followed by 174 pages of exhibits).

[26] As identified by Ms. Gassmann, the probate proceeding is the Estate of Felix Aguiar, Sr., Case No. 2005-CP-127-K, Probate Division, Sixteenth Judicial Circuit, Monroe County, Florida.

Ms. Gassmann also alleges JJS failed to serve her with the Motion. She opposes the Motion on that ground as well.

### III. Law & Analysis

#### A. 11 U.S.C. § 362(d)(4)(B)

The Court is required to grant relief from the automatic stay as to acts against real property "if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved … multiple bankruptcy filings affecting such real property." 11 U.S.C. § 362(d)(4)(B). "Parsing the syntax of § 362(d)(4) reveals that all that is required is proof either of a 'scheme to hinder' creditors or a 'scheme to delay' creditors. 'Hinder' and 'delay' are independently sufficient grounds for such relief against a background of multiple bankruptcy filings. Likewise, a 'scheme to defraud' creditors is a third independent ground that need not be proved. It suffices to prove either a purpose to hinder or a purpose to delay. In other words, intent to defraud is not essential." *In re Town & Country Event Ctr. LLC*, 673 B.R. 445, 451 (Bankr. E.D. Cal. 2025).

The unnumbered concluding paragraph of § 362(d) states an order granting relief under § 362(d)(4) may have a prospective effect (often referred to "in rem" relief), such that the order is binding for the next two years in bankruptcy cases filed over that period:

> If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed

10

circumstances or for good cause shown, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording.

11 U.S.C. § 362(d) (hanging paragraph).

### B. Relief from the Automatic Stay under 11 U.S.C. § 362(d)(4)(B) is Warranted

The Court finds this case was filed as part of a scheme to delay or hinder JJS through multiple bankruptcy filings affecting the 1100 Packer Street Property.

"The creditor bears the initial burden of showing cause for relief from the stay exists under § 362(d)(4). Upon such a showing, the burden shifts to the debtor to demonstrate the filing of the petition was not part of a scheme to delay, hinder, or defraud the creditor." *In re Moss*, 625 B.R. 305, 307 (Bankr. D.S.C. 2021).

The Court may infer an intent to hinder, delay, or defraud creditors from serial bankruptcy filings, particularly when they appear to be strategically timed to protect the property at issue. *See, e.g.*, *In re Bliss*, No. 21-50333 (JAM), 2021 WL 3629308, at *3, 2021 Bankr. LEXIS 2228, at *7 (Bankr. D. Conn. Aug. 16, 2021) ("Bankruptcy courts 'may infer an intent to hinder, delay, and defraud creditors from the fact of serial filings alone.' Here, the record establishes that the Debtor filed three bankruptcy cases throughout the pendency of the State Court Foreclosure Action. In addition to the fact that the Debtor filed multiple bankruptcy filings affecting the Property, the Debtor's 2019 Bankruptcy Case and the instant case were filed in relation to pivotal events in the State Court Foreclosure Action.") (citations omitted) (quoting *In re Procel*, 467 B.R. 297, 308 (S.D.N.Y. 2012)); *In re Moss*, 625 B.R. at 307

11

("In determining whether a debtor acted in bad faith to warrant *in rem* relief, the Court also considers: '1) strategic filing of bankruptcy petitions to prevent collection; 2) multiple petitions by multiple parties to protect common property; 3) lack of evidence of changed circumstances between filings; and 4) inability to fund a plan.'") (quoting *In re Henderson*, 395 B.R. 893, 901 (Bankr. D.S.C. 2008)); *In re Briarwood Acquisition, LLC*, No. 15-20596 (AMN), 2015 WL 5601351, at *2, 2015 Bankr. LEXIS 2649, at *6 (Bankr. D. Conn. Aug. 7, 2015) ("In determining whether a debtor filed a petition as part of a scheme to delay, hinder or defraud creditors pursuant to 11 U.S.C. § 362(d)(4), courts may consider the timing and sequence of the filings. Courts may also consider a debtor's efforts to prosecute the pending case.") (citation omitted); *In re Hudgens*, 662 B.R. 250, 255 (Bankr. D.S.C. 2024) ("The unsuccessful bankruptcy filings by Hudgens and co-debtor since 2021 that repeatedly ceased foreclosure proceedings, with no demonstrated change in circumstances, would be enough to warrant *in rem* relief.").

Here, the record shows the following. This is the fifth bankruptcy case filed within 12 months that appears strategically timed to prevent JJS from enforcing foreclosure judgments. The first two bankruptcy cases prevented JJS's foreclosure sale of the 1104 Packer Street Property while the last three prevented JJS's foreclosure sale of the 1100 Packer Street Property. Both properties appear to be owned (directly or indirectly) by either Ms. Gassmann or an entity owned and/or controlled by Ms. Gassmann. Two of the five cases were filed by Ms. Gassmann individually, two were filed by entities Ms. Gassmann directly or indirectly owns

12

and/or controls, and one was filed by Ms. Gassman's close associate and family friend claiming a leasehold interest in the 1100 Packer Street Property. All five cases were filed with a skeleton petition within days of a foreclosure sale. Each of the previous four cases resulted in stay relief in favor of JJS followed shortly by involuntary dismissal.

Given these circumstances, the Court infers this case was filed as part of a scheme to hinder or delay JJS's foreclosure efforts as to the 1100 Packer Street Property.

Ms. Gassmann has attempted to detract from the apparent coordination of the numerous bankruptcy filings by noting the previous four cases were filed by four different individuals or entities.[27] However, given the common creditor, the relationship of the debtors, the commonality of the real property involved, and Ms. Gassmann's fingerprints across all five cases, the Court considers the variety of filers as strengthening—not weakening—the already robust circumstantial evidence supporting the inference of a scheme to hinder or delay JJS's foreclosure efforts.[28]

In light of the above, Ms. Gassmann has the burden to demonstrate this

---

[27] *See, e.g.*, Doc. 47 at 13, ¶ 19 ("The bankruptcy filings listed in Gleason's chart were filed by four separate legal persons: the Debtor (one prior case), Palani Meador, Virginia & Packer Holdings LLC, and Sinnsearan LLC. These are distinct persons with distinct legal interests, each with independent cause to seek bankruptcy protection from the same creditor. JJS has offered no evidence of coordination-no communications, no agreements.").

[28] Additionally, that the first two cases affected the foreclosure of the 1104 Packer Street Property does not undermine or prevent the inference the present case was filed as part of a scheme to hinder or delay foreclosure as to the 1100 Packer Street Property. Those first two cases strengthen the inference in this case as they are evidence of a more general scheme or modus operandi employed by Ms. Gassmann in response to JJS foreclosure efforts. Regardless, under the circumstances, the Court would reach the same result even if it were to disregard the first two bankruptcy cases and considered only the three most recent cases.

13

bankruptcy case was not part of a scheme to delay or hinder JJS. She failed to carry that burden. Consistent with the numerous documents and voluminous attachments Ms. Gassmann filed with the Court, the vast majority of Ms. Gassmann's arguments and evidence at the Motion hearing pertained to issues outside the narrow scope of § 362(d)(4). For the most part, Ms. Gassmann used the hearing as an opportunity to dispute the validity of JJS's claim and to air various grievances and perceived injustices. She did not speak to whether she filed this case as part of a scheme to hinder or delay JJS.

Ms. Gassmann did, however, offer testimony that indirectly shed light on issues of intent. Ms. Gassmann noted at the hearing, several times throughout her testimony and closing argument, the impact that JJS's foreclosure efforts have had, and would continue to have, on her attempts to build a legacy for her children.[29] The Court finds these statements by Ms. Gassmann highly probative on the impetus for her actions. Ms. Gassmann's desire to preserve these properties for her children provides a simple, unified explanation for the numerous bankruptcy filings and continued post-judgment litigation over the foreclosures. This potential loss of assets intended for Ms. Gassmann's children is, in the Court's assessment, the likeliest explanation.

---

[29] *See, e.g.*, Audio Recording of Hearing attached to Doc. 63, at 00:03:25 to 00:03:46 ("My interest in in in trying to assist Mr. Roher in, in consultation with Mr. Meador, was simply to ensure that property was not lost so that my children could essentially get the property back and potentially not have ever lost it in a foreclosure sale."); 00:26:14 to 00:26:18 ("My, my entire life savings were wrapped up in these three properties"); 00:26:37 to 00:26:44 ("And my -- my -- my -- my true interest here is to ensure that the children, um, have a legacy"); 00:46:25 to 00:46:36 (closing argument) ("I have spent the better part of, um, my lifetime acquiring properties, for my retirement and for my children.").

14

The Court also finds probative the following statement from Ms. Gassmann, made in one of her filings and in opposition to the prospective nature of a § 362(d)(4) finding: "The two-year prospective injunction JJS seeks would extinguish not only the Debtor's rights but the rights of innocent third parties to seek bankruptcy protection with respect to 1100 Packer Street. This extraordinary remedy would immunize JJS from any legal challenge for two years regardless of what discovery reveals." Doc. 47 at 13, ¶ 20. In the present context—a fifth bankruptcy within one year, filed by four different individuals or entities, each claiming different interests in common real property—the Court views this statement as tantamount to an admission that bankruptcy cases will continue to be filed by persons or entities claiming an interest in the 1100 Packer Street Property unless and until relief is granted pursuant to § 362(d)(4).

For all the foregoing reasons, the Court finds this case was filed as part of a scheme to hinder or delay JJS's foreclosure efforts as to the 1100 Packer Street Property.

### C. Various Issues or Defenses Raised by Ms. Gassmann

#### 1. Validity of JJS's Claim

As noted above, Ms. Gassmann's opposition to the Motion is driven primarily by disputes relating to the validity JJS's claim against the 1100 Packer Street Property. The Court stated at the hearing the validity of JJS's claim and the merits of Ms. Gassmann's various objections to the claim were not issues to be decided in

15

connection with the Motion. The Court takes this opportunity to elaborate on its statements at the hearing.

"Congress intended that hearings under Section 362 should be expedited, summary proceedings." *In re Regency Woods Apartments, Ltd.*, 686 F.2d 899, 902 (11th Cir. 1982). *See also, e.g.*, *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 33 (1st Cir. 1994) ("a hearing on a motion for relief from stay is merely a summary proceeding of limited effect"). As such, "[a] hearing on a motion for relief from stay is not designed to resolve substantive claims between parties. Its purpose is to permit a creditor who asserts a colorable claim to obtain relief from stay to adjudicate its rights elsewhere pursuant to nonbankruptcy law." *In re Hepburn*, No. 25-57411-PWB, 2025 WL 2808651, at *2, 2025 Bankr. LEXIS 2482, at *5–6 (Bankr. N.D. Ga. Sept. 30, 2025). *See also, e.g.*, *Strickland v. Wells Fargo Bank*, No. 5:14-CV-00186 CAR, 2014 WL 7003772, at *2, 2014 U.S. Dist. LEXIS 170661, at *5 (M.D. Ga. Dec. 10, 2014) ("A 'hearing on a motion for relief from stay is meant to be a summary proceeding, and the validity or merits of claims and defenses are not litigated during the hearing.' Rather, the purpose of the hearing is simply to determine whether a creditor has a colorable claim to property of the estate.'") (quoting *In re Fontaine*, No. 10-98793, 2011 WL 1930620, at *1, 2011 Bankr. LEXIS 1864, at *3 (Bankr. N.D. Ga. Apr. 14, 2011)).

In other words, in the context of stay relief under § 362, Ms. Gassmann's numerous arguments attacking the validity of JJS's claim are beside the point. JJS is neither required nor expected to address all of those arguments, let alone disprove

16

them, in a stay relief proceeding. JJS need only show a colorable claim to the 1100 Packer Street Property to seek relief from the automatic stay. Here, JJS's claim arises from a final judgment of foreclosure entered by the Circuit Court of the Sixteenth Judicial Circuit in and for Monroe County, Florida. JJS has met its burden of showing a colorable claim. *See, e.g.*, *In re Montgomery*, 262 B.R. 772, 776 (B.A.P. 8th Cir. 2001) ("[T]he bankruptcy court should not entertain and decide a respondent's challenge to a movant's underlying post-foreclosure position in the context of a motion for relief from stay, where the movant has a 'colorable' claim of ownership after a completed foreclosure sale and the challenge would sound under nonbankruptcy foreclosure law or under 11 U.S.C. §§ 544, 547, or 548.").

### 2. Service of Motion

Ms. Gassmann also opposes the Motion on grounds of lack of service. Attached to the Motion is a certificate of service reflecting service on Ms. Gassmann at two locations: (1) her address of record as listed in the bankruptcy record, 12172 Linton Road, Sparta, Georgia, and (2) the 1100 Packer Street Property. *See* Doc. 15 at 9.

"There is a presumption that a letter that is properly addressed and placed in the mail will be delivered to the addressee in a timely manner. However, this presumption is rebuttable." *In re Hobbs*, 141 B.R. 466, 468 (Bankr. N.D. Ga. 1992) (citations omitted). "The mere denial of receipt, without more, is insufficient to rebut the presumption. But direct testimony of nonreceipt, combined with other evidence, may be sufficient to rebut the presumption." *In re Farris*, 365 F. App'x 198, 200 (11th Cir. 2010) (citations omitted).

17

Here, there is a presumption that Ms. Gassmann received the Motion because the Motion's certificate of service reflects service via mail addressed to Ms. Gassmann at her home address as provided in her bankruptcy petition. *See, e.g., id.* ("Here, the court's notice of the hearing was accompanied by a certificate of service showing that the notice was mailed to Farris at his home address as provided in the bankruptcy petition. This mailing complied with the Bankruptcy Rules and the Federal Rules of Civil Procedure for completing service. Thus, it is presumed that the notice was received.").

Ms. Gassmann testified at the hearing she did not receive a copy of the Motion at her address of record in Sparta, Georgia, and that she received notice of the Motion through her tenant at the 1100 Packer Street Property.[30] The Court considers this testimony as "mere denial of receipt, without more," such that it "is insufficient to rebut the presumption" of receipt. *In re Farris*, 365 F. App'x at 200.

Additionally, Ms. Gassmann's testimony on this point lacks credibility. In the Court's experience, in the face of an attorney's certification of mailing, the more likely explanation for a pro se party's denial of having received a piece of mail is a lack of diligence or candor by the pro se party. In this case and across the various other bankruptcy cases and state court appeals, allegations of lack of service or notice

---

[30] Audio Recording of Hearing attached to Doc. 63, at 00:04:16 to 00:04:37 ("So essentially my -- my response to the creditor's claim is based on some fundamental arguments. One was just the -- the -- the defective service. As a preliminary matter the creditor didn't ever serve me with this motion. He mailed it to 1100 Packer in Key West."); 00:04:49 to 00:05:06 ("They proceeded to send the mail to 1100 Packer. I don't know there if is a certificate of service on the creditor's motion but I can testify today that no mail was ever received by me at my address here in Hancock County."); 00:47:31 to 00:47:44 ("I swear to God I did not receive any mail in Linton. I received a notice from my tenant that there was mail that was delivered in in Key West.").

18

abound.[31] The numerosity of allegations suggest a persistent and ubiquitous failure to serve and false certifications by several attorneys across different law firms and different states in different courts. The more likely scenario, in the Court's assessment, is a lack of diligence or candor on the part of those making the allegations. This is particularly true here, where the physical addresses and legal names of the pro se parties are numerous and appear to be moving targets.[32] The Court has little basis to conclude with any confidence that Ms. Gassmann's Georgia address is her current address or a stable residence, so the Court gives little weight to the contention that she failed to receive a piece of mail at that address.

---

[31] *See, e.g.*, Doc. 50 at 18, ¶ 41(d) ("Multiple appeals by multiple parties are pending ... in the foreclosure case relating to 1100 Packer .... The appeals raise issues including whether courts had personal jurisdiction over parties who were not personally served, including Ms. Gassmann and Palani Meador[.]"); Doc. 47 at 2, ¶ 4 (the "Motion was never served on the Debtor at her address of record .... Instead, counsel mailed it to 1100 Packer Street, Key West, Florida—a property occupied by a tenant, Palani Meador, not the Debtor.").Second Bankruptcy Case Doc. 48 at 4, ¶¶ 20–21 (alleging that in the First Bankruptcy Case, Ms. Gassmann's bankruptcy attorney "did not provide Gassmann with notice of the filing of the Creditor's motion for relief from the automatic stay" and "did not provide Ms. Gassmann with notice of the hearing"); Second Bankruptcy Case Doc. 48 at 5–6, ¶ 28 (stating the foreclosure judgment as to the 1104 Packer Street Property was obtained by, among other means, "Titan failing to serve the owner of record"); Third Bankruptcy Case Doc. 20 at 2, ¶ 7 ("Debtor is filing a grievance with the Florida Bar concerning [JJS's counsel's] unethical act of falsely certifying service done for the purpose of obtaining Short Notice Relief against a Pro Se Debtor."); Fourth Bankruptcy Case Doc. 13 at 3, ¶¶ 11–12 (stating multiple notices of appeal were filed as to the 1104 Packer Street Property foreclosure judgment because "[t]here is no record of service" as to Ms. Gassmann and Mr. Meador).

[32] *See, e.g.*, Doc. 1 at 1, 2 (bankruptcy petition filed January 27, 2026, by Tanya Allison Gassmann, with an address of 12172 Linton Road, Sparta, Georgia); Doc. 51-2 at 3 (appeal brief filed by Allison Tanya Gassmann on January 22, 2026—five days before this case was filed—stating her address is 638 Rockland Place, Victoria, British Columbia, Canada); First Bankruptcy Case Doc. 1 at 1, 2, 11 (bankruptcy petition filed February 12, 2025, by Allison Tanya McLeod Gassmann located at the 1100 Packer Street Property, and identifying Palani Meador as located at 3330 Northside Drive Apt. 415, Key West, Florida); Second Bankruptcy Case Doc. 1 at 1 (bankruptcy petition filed by Sinnsearan LLC, formerly known as Katharina Tiffany and Veritas Gassmann L.L.C., with a principal place of business at 30 N. Gould Street, Ste R, Sheridan, Wyoming, and a mailing address of 3330 Northside Drive, Suite 415, Key West, Florida); Third Bankruptcy Case Doc. 1 at 1, 2 (bankruptcy petition filed October 2, 2025, by Palani Meador, located at the 1100 Packer Street Property); Fourth Bankruptcy Case Doc. 1 at 1, 2 (bankruptcy petition filed November 20, 2025, by Virginia and Packer Holdings L.L.C., with a principal place of business of 922 Virginia Street, Key West, Florida, and a mailing address of 930 Truman Street, Suite 48, Key West, Florida).

## IV. Conclusion

For all the foregoing reasons, the Court finds the filing of this case was part of a scheme to hinder or delay JJS through multiple bankruptcy filings affecting the 1100 Packer Street Property. The Court will enter an order consistent with this memorandum opinion.

**END OF DOCUMENT**